**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JAMES MILLER, individually and on behalf of all others similarly situated,<br><br>                            Plaintiff,<br><br>   v.<br><br>TEKNIPLEX, INC.,<br><br>                            Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>CLASS ACTION<br><br>JURY TRIAL DEMANDED |

Plaintiff James Miller ("Plaintiff"), individually and on behalf of all others similarly situated, by and through the undersigned attorneys, brings this class action against Defendant TekniPlex, Inc. ("Defendant" or "TekniPlex") and alleges upon personal knowledge as to his own actions, and upon information and good faith belief as to all other matters, as follows:

## INTRODUCTION

1.     Plaintiff brings this class action against Defendant TekniPlex for its failure to secure and safeguard private and personally identifiable information ("Private Information" or "Personal Information") impacted by a cybersecurity incident affecting Defendant's information systems (the "Data Breach" or the "Breach").

2.     TekniPlex is a Wayne, Pennsylvania-based entity that works in the healthcare and consumer product markets; it provides "medical device components" and various other "materials science solutions."[1] It claims to employ 9,000 people across the globe.[2]

3.     Employees of TekniPlex are required to provide it with their sensitive Private Information. By being entrusted with this sensitive information, TekniPlex assumed a legal duty

---

[1] *Realize Your Inspiration with Our Materials Science Innovation,* TEKNIPLEX, https://tekni-plex.com/en/about-us (last visited Sep. 29, 2025).
[2] *Id.*

to reasonably safeguard it.

4.      The Data Breach at issue in this litigation involved unauthorized access to TekniPlex's network, with initial access detected on November 18, 2024. TekniPlex's network was accessed at various times between October 25, 2024, and December 7, 2024; during that time certain files were accessed and copied without authorization.

5.      Upon information and belief and according to TekniPlex and public reports, the exposed information may include names, Social Security numbers, driver's license information and financial account information.[3] The exact data compromised varies by individual, but Defendant confirmed that sensitive personal information was potentially stolen.

6.      Defendant's September 24, 2025 consumer notification was posted on the Vermont Attorney General's website.[4] The notice merely states that TekniPlex is mailing letters to affected individuals and offering credit monitoring services.[5]

7.      The consumer notification acknowledges that Plaintiff's and class members' Private Information was unlawfully accessed by the cyber criminals, but TekniPlex did not disclose how Defendant discovered the files on its computer systems were impacted, the means and mechanism of the cyberattack, the reason for the approximately ten month delay in disclosing the Data Breach, how it determined that the Personal Information had been accessed by the unauthorized actor(s), and, importantly, what specific steps it took following the Data Breach to secure its systems and prevent future cyberattacks.

---

[3] Data Breach Notice from TekniPlex (Sep. 24, 2025), https://ago.vermont.gov/sites/ago/files/documents/2025-09-24%20Tekni-Plex%20Data%20Breach%20Notice%20to%20Consumers.pdf.
[4] *2025-09-24 Tekni-Plex Data Breach Notice to Consumers*, CHARITY R. CLARK OFF. OF THE VT. ATT'Y GEN., https://ago.vermont.gov/document/2025-09-24-tekni-plex-data-breach-notice-consumers (last visited Sep. 29, 2025).
[5] Data Breach Notice from TekniPlex, *supra* note 2.

8. The Data Breach was a direct result of Defendant's failure to implement adequate and reasonable cybersecurity procedures and protocols necessary to protect Private Information from the foreseeable threat of a cyberattack.

9. Plaintiff brings this class action lawsuit individually and on behalf of those similarly situated to address TekniPlex's inadequate safeguarding of Plaintiff's and class members' Private Information that it collected and maintained, and for failing to provide adequate notice to Plaintiff and class members.

10. Plaintiff brings claims for negligence, breach of fiduciary duty, unjust enrichment, and declaratory and injunctive relief. To remedy these violations of law, Plaintiff and class members seek actual damages, statutory damages, restitution, and injunctive and declaratory relief (including significant improvements to Defendant's data security protocols and employee training practices); reasonable attorneys' fees, costs, and expenses incurred in bringing this action; and all other remedies this Court deems just and proper.

## PARTIES

### Plaintiff

#### *Plaintiff James Miller*

11. Plaintiff James Miller is a resident of Maricopa County, Arizona and citizen of the state of Arizona, where Plaintiff intends to remain.

12. Plaintiff is a former employee of Defendant Tekni-Plex in Milwaukee, Wisconsin where Plaintiff was employed as a Lead Operator for Tekni-Plex. Plaintiff was employed by Defendant between November 2020 and August 2021.

13. As a condition of his employment, Plaintiff provided sensitive personal information, directly or indirectly, to Defendant in connection with his job. In requesting and

maintaining Plaintiff's Personal Information for its business purposes, Defendant undertook a duty to act reasonably in its handling of Plaintiff's Personal Information. On information and belief, Defendant did not take proper care of Plaintiff's Personal Information, leading to its exposure by cybercriminals as a direct result of its inadequate security measures.

14.     At the time of the Data Breach, Defendant retained Plaintiff's Private Information in its system.

15.     As detailed herein, Plaintiff's Private Information was compromised in the Data Breach and stolen by cybercriminals who illegally accessed Defendant's network for the specific purpose of targeting the Private Information.

16.     On or around September 29, 2025, Plaintiff received a notice letter delivered to him by Defendant  alerting Plaintiff that a cybersecurity incident impacted Defendant's internal company documents, potentially including the private data of individuals such as himself.

17.     Plaintiff takes reasonable measures to protect his own Private Information. Plaintiff has never knowingly transmitted unencrypted Private Information over the internet or other unsecured source.

18.     Plaintiff stores any document containing his Private Information in a safe and secure location and diligently chooses unique usernames and passwords for online accounts.

19.     As a result of the Data Breach, Plaintiff has suffered a loss of time and has spent and continues to spend a considerable amount of time on issues related to this Data Breach. Plaintiff monitors accounts and credit scores and has sustained emotional distress. This is time that was lost and unproductive and took away from other activities.

20.     Plaintiff suffered actual fraud in the form of unauthorized attempts to access his AT&T account. Between early Spring through July 2025, Plaintiff received multiple notifications

alerting him that an unknown individual was attempting to reset Plaintiff's password without authorization leading Plaintiff to reset his password for the account between 10 and 12 times.

21.    Plaintiff also suffered actual injury in the form of damages to and diminution in the value of Plaintiff's Private Information—a form of intangible property that Plaintiff entrusted to Defendant for the purpose of obtaining services from Defendant, which was compromised in and as a result of the Data Breach.

22.    Plaintiff suffered lost time, interference, and inconvenience as a result of the Data Breach and has anxiety and increased concerns for the loss of privacy.

23.    Plaintiff has suffered imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse relating to Plaintiff's Private Information, especially Plaintiff's name, Social Security number, and PHI, being placed in the hands of criminals.

24.    Defendant obtained and continues to maintain Plaintiff's Private Information and has a continuing legal duty and obligation to protect that Private Information from unauthorized access and disclosure. Plaintiff's Private Information was compromised and disclosed as a result of the Data Breach.

25.    As a result of the Data Breach, Plaintiff anticipates spending considerable time on an ongoing basis to try to mitigate and address harms caused by the Data Breach.

26.    As a result of the Data Breach, Plaintiff is at a present risk and will continue to be at increased risk of identity theft and fraud for years to come.

**Defendant**

27.     Defendant TekniPlex, Inc. is a corporation formed under the laws of the Commonwealth of Pennsylvania with corporate headquarters located at 460 E. Swedesford Road, Suite 3000, Wayne, PA 19087.

## JURISDICTION AND VENUE

28.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(A), as modified by the Class Action Fairness Act of 2005, because at least one member of the class is a citizen of a different state than Defendant, there are more than 100 members of the class, and the aggregate amount in controversy exceeds $5,000,000 exclusive of interests and costs.

29.     This Court has personal jurisdiction over Defendant because Defendant maintains its principal place of business in Pennsylvania and conducts substantial business in Pennsylvania and in this district through its principal place of business; engaged in the conduct at issue herein from and within this District; and otherwise has substantial contacts with this District and purposely availed itself of the Courts in this District.

30.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) because a substantial part of the events giving rise to this action occurred in this District. Moreover, Defendant resides in this district, maintains Plaintiff's and class members' Private Information in this district, and this district is where a substantial part of the acts, omissions, and events giving rise to Plaintiff's claims occurred.

## FACTUAL ALLEGATIONS

**A.     Overview of TekniPlex**

31.     Founded in 1967, Defendant is a Wayne-based company that "provides medical device components and a multitude of materials science solutions" which are "found in some of

the most well-known names in the Healthcare, Personal Care, Household, and Food and Beverage Market."[6]

32.     Defendant employs around 9,000 people and operates in the United States, Belgium, Brazil, Canada, China, Colombia, Costa Rica, Germany, India, Italy, Mexico, Northern Ireland, and Slovakia.[7]

33.     In the regular course of its business, Defendant collects and maintains Private Information. As a regular part of its business, Defendant requires individuals to provide personal information directly or indirectly before it provides its services. Defendant also collects Private Information from its employees as a condition of their employment. Defendant stores this information digitally.

34.     Defendant is required to implement adequate safeguards to prevent unauthorized use or disclosure of Private Informationand to report any unauthorized use or disclosure of Private Information.

35.     In its Privacy Policy, Defendant affirms that it "takes your privacy seriously,"[8] yet Defendant maintained inadequate security measures which allowed the Data Breach to occur. It then waited 10 months after discovering the Data Breach to disclose that Private Information had been compromised.

36.     Plaintiff and class members are, or were, current or former employees,  and potentially included patients of Defendant's customers and/or those who received health-related or other services from Defendant, or otherwise are affiliated or transacted with Defendant, and

---

[6] *Realize Your Inspiration*, *supra* note 1.
[7] *Id.*
[8] https://tekni-plex.com/en/privacy-policy (last visited Sept. 30, 2025).

entrusted Defendant with their Private Information or otherwise had their Private Information entrusted to Defendant.

37.    Because of the highly sensitive and personal nature of the information Defendant acquires and stores, Plaintiff and class members reasonably expect that Defendant will, among other things: keep their Personal Information confidential; comply with healthcare industry standards related to data security and Personal Information; inform them of legal duties and comply with all federal and state laws protecting their Personal Information; only use and release their Personal Information for reasons that relate to medical care and treatment; and provide adequate notice to them if their Personal Information is disclosed without authorization.

**B.    The Data Breach Compromised Plaintiff's and Class Members' Private Information**

38.    According to the privacy notification provided by Defendant to state attorneys' general (to be disseminated to impacted persons), Defendant was subject to a cybersecurity attack beginning on or around October 25, 2024 that lasted until December 7, 2024.[9]

39.    On November 18, 2024, Defendant discovered unusual activity within its data network. In response to the discovery of this unauthorized activity, Defendant launched an internal investigation to determine the nature and scope of the Data Breach.[10]

40.    Defendant learned that these files included, but may not be limited to: names, Social Security numbers, driver's license numbers and financial account information.

41.    Defendant did not publicly announce the Data Breach until 10 months later, on or around September 24, 2025.

42.    Defendant's disclosures omit pertinent information including how criminals gained access to the files on its systems, what computer systems were impacted, the means and

---

[9] Data Breach Notice from TekniPlex, *supra* note 2.
[10] *Id.*

mechanisms of the cyberattack, how it determined that the Personal Information had been accessed, and, of particular importance to Plaintiff and class members, what actual steps Defendant took following the Data Breach to secure its systems and train its employees to prevent further cyberattacks.

43.     Based on Defendant's acknowledgment that Personal Information was accessed by an unauthorized party, it is evident that unauthorized criminal actors did, in fact, access Defendant's network and thus Plaintiff's and class members' Personal Information in an attack designed to acquire that sensitive, confidential, and valuable information.

44.     The Personal Information contained in the files accessed by cybercriminals appears not to have been encrypted, because, if properly encrypted, the attackers would have acquired unintelligible data and would not have "accessed" Personal Information.

45.     As a business entity that collects, creates, and maintains significant volumes of personal information, the targeted attack was a foreseeable risk of which Defendant was aware and knew it had a duty to guard against.

46.     The targeted attack was expressly designed to gain access to and exfiltrate private and confidential data, including (among other things) the Personal Information of Plaintiff and class members.

47.     Due to Defendant's inadequate security measures, Plaintiff and class members now face a present, immediate, and ongoing risk of fraud and identity theft and must deal with that threat forever.

48.     Defendant had obligations created by contract, industry standards, and common law to Plaintiff and class members to keep their Personal Information confidential and to protect it from unauthorized access and disclosure.

49.     Plaintiff and class members entrusted their Personal Information to Defendant, or otherwise had that information provided to Defendant, with the reasonable expectation and mutual understanding that Defendant or anyone who used their Personal Information in conjunction with the services they received would comply with obligations to keep such information confidential and secure from unauthorized access after it received such information.

50.     By obtaining, collecting, using, and deriving a benefit from Plaintiff's and class members' Personal Information, Defendant assumed legal and equitable duties and knew or should have known that it was responsible for protecting Plaintiff's and class members' Personal Information from unauthorized disclosure.

51.     Plaintiff and the class members have taken reasonable steps to maintain the confidentiality of their personal information. Plaintiff and class members would not have allowed Defendant or anyone in Defendant's position to receive their Private Information had they known that Defendant would fail to implement industry standard protections for that sensitive information.

52.     As a result of Defendant's negligent and wrongful conduct, Plaintiff's and class members' highly confidential and sensitive Personal Information was left exposed to cybercriminals. The unencrypted Personal Information of Plaintiff and class members will end up for sale to identity thieves on the dark web, if it has not already, or it could simply fall into the hands of companies that will use the detailed Personal Information for targeted marketing without the approval of Plaintiff and class members. Unauthorized individuals can now easily access the Personal Information of Plaintiff and class members.

**C.    Defendant Failed to Follow FTC Guidelines**

53.    Defendant was also prohibited by the Federal Trade Commission Act (the "FTC Act") (15 U.S.C. § 45) from engaging in "unfair or deceptive acts or practices in or affecting commerce." The Federal Trade Commission (the "FTC") has concluded that a company's failure to maintain reasonable and appropriate data security for consumers' sensitive personal information is an "unfair practice" in violation of the FTC Act. *See, e.g., FTC v. Wyndham Worldwide Corp.*, 799 F.3d 236 (3d Cir. 2015).

54.    The FTC has promulgated numerous guides for businesses which highlight the importance of implementing reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision-making.

55.    In 2016, the FTC updated its publication, *Protecting Personal Information: A Guide for Business*, which established cybersecurity guidelines for businesses. The guidelines note that businesses should protect the personal information that they keep; properly dispose of personal information that is no longer needed; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies to correct any security problems.

56.    The guidelines also recommend that businesses use an intrusion detection system to expose a breach as soon as it occurs; monitor all incoming traffic for activity indicating someone is attempting to hack the system; watch for large amounts of data being transmitted from the system; and have a response plan ready in the event of a breach.

57.    The FTC further recommends that companies not maintain personal information longer than is needed for authorization of a transaction; limit access to sensitive data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for

suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.

58.    The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

59.    These FTC enforcement actions include actions against healthcare providers and partners like Defendant. *See, e.g., In the Matter of Labmd, Inc., A Corp*, 2016-2 Trade Cas. (CCH) ¶ 79708, 2016 WL 4128215, at *32 (MSNET July 28, 2016) ("[T]he Commission concludes that LabMD's data security practices were unreasonable and constitute an unfair act or practice in violation of Section 5 of the FTC Act.").

60.    Defendant failed to properly implement basic data security practices.

61.    Defendant's failure to employ reasonable and appropriate measures to protect against unauthorized access to Personal Information constitutes an unfair act or practice prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45.

62.    Defendant was at all times fully aware of its obligation to protect the Personal Information about whom it stored Personal Information. Defendant was also aware of the significant repercussions that would result from its failure to do so.

**D.    Defendant Failed to Comply with Industry Standards**

63.    As described above, experts studying cybersecurity routinely identify healthcare providers and their business associates as being particularly vulnerable to cyberattacks because of the value of the Private Information which they collect and maintain.

64.     Several best practices have been identified that at a minimum should be implemented by business entities like Defendant, including but not limited to: educating all employees; strong passwords; multi-layer security, including firewalls, anti-virus, and anti-malware software; encryption, making data unreadable without a key; multi-factor authentication; backup data; and limiting which employees can access sensitive data.

65.     Other best cybersecurity practices that are standard in the healthcare industry include installing appropriate malware detection software; monitoring and limiting the network ports; protecting web browsers and email management systems; setting up network systems such as firewalls, switches, and routers; monitoring and protection of physical security systems; protection against any possible communication system; and training staff regarding critical points.

66.     Defendant failed to meet the minimum standards of any of the following frameworks: the NIST Cybersecurity Framework Version 1.1 (including without limitation PR.AC-1, PR.AC-3, PR.AC-4, PR.AC-5, PR.AC-6, PR.AC-7, PR.AT-1, PR.DS-1, PR.DS-5, PR.PT-1, PR.PT-3, DE.CM-1, DE.CM-4, DE.CM-7, DE.CM-8, and RS.CO-2), and the Center for Internet Security's Critical Security Controls (CIS CSC), which are all established standards in reasonable cybersecurity readiness.

**E.    Defendant Owed Plaintiff and Class Members a Duty to Safeguard Their Personal Information**

67.     In addition to its obligations under federal and state laws, Defendant owed a duty to Plaintiff and class members to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting the Personal Information in its possession from being compromised, lost, stolen, accessed, and misused by unauthorized persons. Defendant owed a duty to Plaintiff and class members to provide reasonable security, including consistency with industry standards and requirements, and to ensure that its computer systems, networks, and protocols

adequately protected the Personal Information of Plaintiff and class members.

68.     Defendant owed a duty to Plaintiff and class members to create and implement reasonable data security practices and procedures to protect the Personal Information in its possession, including adequately training its employees and others who accessed Personal Information within its computer systems on how to adequately protect Personal Information.

69.     Defendant owed a duty to Plaintiff and class members to implement processes that would detect a compromise of Personal Information in a timely manner.

70.     Defendant owed a duty to Plaintiff and class members to act upon data security warnings and alerts in a timely fashion.

71.     Defendant owed a duty to Plaintiff and class members to disclose in a timely and accurate manner when and how the Data Breach occurred.

72.     Defendant owed a duty of care to Plaintiff and class members because they were foreseeable and probable victims of any inadequate data security practices.

73.     Defendant breached its obligations to Plaintiff and class members and/or was otherwise negligent and reckless because it failed to properly maintain and safeguard its computer systems and data and failed to audit, monitor, or ensure the integrity of its vendor's data security practices. Defendant's unlawful conduct includes, but is not limited to, the following acts and/or omissions:

   a.     Failing to maintain an adequate data security system that would reduce the risk of data breaches and cyberattacks;

   b.     Failing to adequately protect Personal Information;

   c.     Failing to properly monitor its own data security systems for existing intrusions;

      d.      Failing to audit, monitor, or ensure the integrity of its vendor's data security practices;

      e.      Failing to sufficiently train its employees and vendors regarding the proper handling of Personal Information;

      f.      Failing to fully comply with FTC guidelines for cybersecurity in violation of the FTCA;

      g.      Failing to adhere to industry standards for cybersecurity as discussed above; and

      h.      Otherwise breaching its duties and obligations to protect Plaintiff's and class members' Personal Information.

74.     Defendant negligently and unlawfully failed to safeguard Plaintiff's and class members' Personal Information by allowing cyberthieves to access its computer network and systems which contained unsecured and unencrypted Personal Information.

75.     Had Defendant remedied the deficiencies in its information storage and security systems or those of its vendors and affiliates, followed industry guidelines, and adopted security measures recommended by experts in the field, it could have prevented intrusion into its information storage and security systems and, ultimately, the theft of Plaintiff's and class members' confidential Personal Information.

**F.    Theft of Private Information Has Grave and Lasting Consequences for Victims**

76.    Theft of Private Information is serious. The FTC warns consumers that identity thieves use Private Information to exhaust financial accounts, receive medical treatment, start new utility accounts, and incur charges and credit in a person's name.[11]

77.    With access to an individual's Personal Information, criminals can do more than just empty a victim's bank account—they can also commit all manner of fraud, including: obtaining a driver's license or official identification card in the victim's name but with the thief's picture, using the victim's name and SSN to obtain government benefits, or filing a fraudulent tax return using the victim's information. In addition, identity thieves may obtain a job using the victim's SSN, rent a house, or receive medical services in the victim's name, and may even give the victim's personal information to police during an arrest, resulting in an arrest warrant being issued in the victim's name.[12] These criminal activities have and will result in devastating financial and personal losses to Plaintiff and class members.

78.    Because a person's identity is akin to a puzzle with multiple data points, the more accurate pieces of data an identity thief obtains about a person, the easier it is for the thief to take on the victim's identity—or track the victim to attempt other hacking crimes against the individual to obtain more data to perfect a crime.

79.    For example, armed with just a name and date of birth, a data thief can utilize a hacking technique referred to as "social engineering" to obtain even more information about a victim's identity, such as a person's login credentials or SSN. Social engineering is a form of

---

[11] *See What to Know About Identity Theft*, Federal Trade Commission Consumer Advice (April 2021) https://www.consumer.ftc.gov/articles/what-know-about-identity-theft (last accessed on May 21, 2024).
[12] *See Warning Signs of Identity Theft*, Federal Trade Commission, https://www.identitytheft.gov/Warning-Signs-of-Identity-Theft (last visited May 30, 2024).

hacking whereby a data thief uses previously acquired information to manipulate and trick individuals into disclosing additional confidential or personal information through means such as spam phone calls and text messages or phishing emails. Data Breaches can be the starting point for these additional targeted attacks on the victim.

80.     One such example of criminals piecing together bits and pieces of compromised Personal Information for profit is the development of "Fullz" packages.[13] With "Fullz" packages, cyber-criminals can cross-reference two sources of Personal Information to marry unregulated data available elsewhere to criminally stolen data with an astonishingly complete scope and degree of accuracy in order to assemble complete dossiers on individuals.

81.     The development of "Fullz" packages means here that the stolen Personal Information from the Data Breach can easily be used to link and identify it to Plaintiff's and class members' phone numbers, email addresses, and other unregulated sources and identifiers. In other words, even if certain information such as emails, phone numbers, or credit card numbers may not be included in the Personal Information that was accessed in the Data Breach, criminals may still easily create a Fullz package and sell it at a higher price to unscrupulous operators and criminals (such as illegal and scam telemarketers) over and over.

---

[13] "Fullz" is jargon for data that includes the information of the victim, including, but not limited to, the name, address, credit card information, SSN, date of birth, and more. As a rule of thumb, the more information you have on a victim, the more money that can be made off of those credentials. Fullz are usually pricier than standard credit card credentials, commanding up to $100 per record (or more) on the dark web. Fullz can be cashed out (turning credentials into money) in various ways, including performing bank transactions over the phone with the required authentication details in hand. Even "dead Fullz," which are Fullz credentials associated with credit cards that are no longer valid, can still be used for numerous purposes, including tax refund scams, ordering credit cards on behalf of the victim, or opening a "mule account" (an account that will accept a fraudulent money transfer from a compromised account) without the victim's knowledge. *See*, *e.g.*, Brian Krebs, *Medical Records for Sale in Underground Stolen From Texas Life Insurance Firm*, Krebs on Security (Sep. 18, 2014), https://krebsonsecurity.com/2014/09/medical-records-for-sale-in-underground-stolen-from-texas-life-insurance-firm/.

82.     The existence and prevalence of "Fullz" packages means that the Personal Information stolen as a direct result of the Data Breach can easily be linked to the unregulated data (like driver's license numbers) of Plaintiff and the other class members.

83.     Thus, even if certain information was not stolen in the Data Breach, criminals can still easily create a comprehensive "Fullz" package.

84.     Then, this comprehensive dossier can be sold—and then resold in perpetuity—to crooked operators and other criminals (like illegal and scam telemarketers).

85.     Personal Information is such a valuable commodity to identity thieves that once it has been compromised, criminals will use it and trade the information on dark web black markets for years.

86.     Cybercriminals may not use the information right away. According to the U.S. Government Accountability Office, which conducted a study regarding data breaches:

> [I]n some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.[14]

87.     For example, it is believed that certain highly sensitive personal information compromised in the 2017 Experian data breach was being used, three years later, by identity thieves to apply for COVID-19-related unemployment benefits.

88.     The Personal Information exposed in this Data Breach is valuable to identity thieves for use in the kinds of criminal activity described herein. These risks are both certainly impending

---

[14] *Report to Congressional Requesters: Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown*, United States Government Accountability Office (June 2007), https://www.gao.gov/assets/gao-07-737.pdf.

and substantial. As the FTC has reported, if cyber thieves get access to a person's highly sensitive information, they will use it.[15]

89. Identity theft is not an easy problem to solve. In a survey, the Identity Theft Resource Center found that most victims of identity crimes need more than a month to resolve issues stemming from identity theft and some need over a year.[16]

90. Theft of SSN also creates a particularly alarming situation for victims because those numbers cannot easily be replaced. In order to obtain a new number, a breach victim has to demonstrate ongoing harm from misuse of his or her SSN, and a new identification number will not be provided until after the victim has suffered the harm. In other words, preventative action to defend against the possibility of misuse of an SSN is not permitted.

91. Even then, a new SSN may not be effective, as "[t]he credit bureaus and banks are able to link the new number very quickly to the old number, so all of that old bad information is quickly inherited into the new Social Security number."[17]

92. Due to the highly sensitive nature of SSNs, theft of SSNs in combination with other PII (e.g., name, address, date of birth) is akin to having a master key to the gates of fraudulent activity. TIME quotes data security researcher Tom Stickley, who is employed by companies to

---

[15] Ari Lazarus, *How fast will identity thieves use stolen info?*, Military Consumer (May 24, 2017), https://www.militaryconsumer.gov/blog/how-fast-will-identity-thieves-use-stolen-info.

[16] *2021 Consumer Aftermath Report: How Identity Crimes Impact Victims, their Families, Friends, and Workplaces*, Identity Theft Resource Center (2021), https://www.idtheftcenter.org/identity-theft-aftermath-study/.

[17] Brian Naylor, *Victims of Social Security Number Theft Find It's Hard to Bounce Back*, NPR (Feb. 9, 2015), http://www.npr.org/2015/02/09/384875839/data-stolen-by-anthem-s-hackers-has-millions-worrying-about-identity-theft.

find flaws in their computer systems, as stating, "If I have your name and your Social Security number and you haven't gotten a credit freeze yet, you're easy pickings."[18]

93.    This data, as one would expect, demands a much higher price on the black market. Martin Walter, senior director at cybersecurity firm RedSeal, explained, "[c]ompared to credit card information, personally identifiable information and Social Security Numbers are worth more than 10x on the black market."[19]

94.    Based on the foregoing, the information compromised in the Data Breach is significantly more valuable than the loss of, for example, credit card information in a retailer data breach because, there, victims can cancel or close credit and debit card accounts. The information compromised in this Data Breach is impossible to "close" and difficult, if not impossible, to change—including names and SSNs.

95.    There may also be a time lag between when sensitive personal information is stolen, when it is used, and when a person discovers it has been used. Fraud and identity theft resulting from the Data Breach may go undetected until debt collection calls commence months, or even years, later. An individual may not know that his or her SSN was used to file for unemployment benefits until law enforcement notifies the individual's employer of the suspected fraud. Fraudulent tax returns are typically discovered only when an individual's authentic tax return is rejected.

96.    For example, on average it takes approximately three months for consumers to discover their identity has been stolen and used, and it takes some individuals up to three years to

---

[18] Patrick Lucas Austin, *'It Is Absurd.' Data Breaches Show it's Time to Rethink How We Use Social Security Numbers, Experts Say*, TIME (Aug. 5, 2019), https://time.com/5643643/capital-one-equifax-data-breach-social-security/.

[19] Tim Greene, *Anthem Hack: Personal Data Stolen Sells for 10x Price of Stolen Credit Card Numbers*, Network World (Feb. 6, 2015), https://www.networkworld.com/article/935334/anthem-hack-personal-data-stolen-sells-for-10x-price-of-stolen-credit-card-numbers.html.

learn that information.[20]

97.     It is within this context that Plaintiff and all other class members must now live with the knowledge that their Personal Information is forever in cyberspace and was taken by people willing to use the information for any number of improper purposes and scams, including making the information available for sale on the black market.

98.     A study by the Identity Theft Resource Center shows the multitude of harms caused by fraudulent use of personal and financial information:



99.     Victims of the Data Breach, like Plaintiff and class members, must spend many hours and large amounts of money protecting themselves from the current and future negative impacts to their privacy and credit because of the Data Breach.[21]

---

[20] John W. Coffey, *Difficulties in Determining Data Breach Impacts*, 17 Journal of Systemics, Cybernetics and Informatics 9 (2019), http://www.iiisci.org/journal/pdv/sci/pdfs/IP069LL19.pdf.
[21]     *Guide for Assisting Identity Theft Victims*, Federal Trade Commission, (Sept. 2013), available at http://www.global-screeningsolutions.com/Guide-for-Assisting-ID-Theft-Victims.pdf.

100.    As a direct and proximate result of the Data Breach, Plaintiff and class members have been placed at an imminent, immediate, and continuing increased risk of harm from fraud and identity theft. Plaintiff and class members must now take the time and effort (and spend the money) to mitigate the actual and potential impact of the Data Breach on their everyday lives, including purchasing identity theft and credit monitoring services every year for the rest of their lives, placing "freezes" and "alerts" with credit reporting agencies, contacting their financial institutions and healthcare providers, closing or modifying financial accounts, and closely reviewing and monitoring bank accounts, credit reports, and health insurance account information for unauthorized activity for years to come.

101.    Plaintiff and class members have suffered or will suffer actual harms for which they are entitled to compensation, including but not limited to the following:

      a.     Trespass, damage to, and theft of their personal property, including Personal Information;

      b.     Improper disclosure of their Personal Information;

      c.     The imminent and certainly impending injury flowing from actual and potential future fraud and identity theft posed by their Personal Information being in the hands of criminals and having already been misused;

      d.     The imminent and certainly impending risk of having their confidential information used against them by spam callers to defraud them;

      e.     Damages flowing from HSG's untimely and inadequate notification of the Data Breach;

      f.     Loss of privacy suffered as a result of the Data Breach;

      g.     Ascertainable losses in the form of out-of-pocket expenses and the value of

their time reasonably expended to remedy or mitigate the effects of the data breach;

h.     Ascertainable losses in the form of deprivation of the value of patients' Personal Information for which there is a well-established and quantifiable national and international market;

i.     The loss of use of and access to their credit, accounts, and/or funds;

j.     Damage to their credit due to fraudulent use of their Personal Information; and

k.     Increased cost of borrowing, insurance, deposits, and other items which are adversely affected by a reduced credit score.

102.     Moreover, Plaintiff and class members have an interest in ensuring that their Personal Information, which remains in the possession of Defendant, is protected from further public disclosure by the implementation of better employee training and industry standard and statutorily compliant security measures and safeguards. Defendant has shown itself to be wholly incapable of protecting Plaintiff's and class members' Personal Information.

103.     Because of the value of its collected and stored data, the medical industry has experienced disproportionally higher numbers of data theft events than other industries. For this reason, HSG knew or should have known about these dangers and strengthened its data security accordingly. HSG was put on notice of the substantial and foreseeable risk of harm from a data breach, yet it failed to properly prepare for that risk.

**G.     The Data Breach Was Foreseeable and Preventable**

104.     Data disclosures and data breaches are preventable.[22] As Lucy Thompson wrote in

---

[22] Lucy L. Thompson, *Despite the Alarming Trends, Data Breaches Are Preventable*, Data Breach and Encryption Handbook (Lucy Thompson, ed., 2012).

the Data Breach and Encryption Handbook, "[i]n almost all cases, the data breaches that occurred could have been prevented by proper planning and the correct design and implementation of appropriate security solutions."[23] She added that "[o]rganizations that collect, use, store, and share sensitive personal data must accept responsibility for protecting the information and ensuring that it is not compromised . . . ."[24]

105.    "Most of the reported data breaches are a result of lax security and the failure to create or enforce appropriate security policies, rules, and procedures … Appropriate information security controls, including encryption, must be implemented and enforced in a rigorous and disciplined manner *so that a data breach never occurs*."[25]

106.    As explained by the Federal Bureau of Investigation, "[p]revention is the most effective defense against ransomware and it is critical to take precautions for protection."[26]

107.    Plaintiff and class members entrusted their Personal Information to Defendant. Plaintiff and class members understood and expected that HSG or anyone in Defendant's position would safeguard their Personal Information against cyberattacks, delete or destroy Personal Information that Defendant was no longer required to maintain, and timely and accurately notify them if their Personal Information was compromised.

**H.    Plaintiff's and Class Members' Damages**

108.    To date, Defendant has done nothing to provide Plaintiff and class members with relief for the damages they have suffered as a result of the Data Breach. Defendant only offered minimal credit monitoring services, but it did not disclose how it determined eligibility. Not only

---

[23] *Id.* at 17.
[24] *Id.* at 28.
[25] *Id.* (emphasis added).
[26] *See How to Protect Your Networks from RANSOMWARE*, at 3, FBI.gov, https://www.fbi.gov/file-repository/ransomware-prevention-and-response-for-cisos.pdf/view (last accessed May 30, 2024).

did Defendant fail to provide any ongoing credit monitoring or identity protection services for all individuals impacted by the Data Breach, but the credit monitoring does nothing to compensate class members for damages incurred and time spent dealing with the Data Breach.

109.    Plaintiff and class members have been damaged by the compromise of their Personal Information in the Data Breach.

110.    As a direct and proximate result of Defendant's conduct, Plaintiff and class members have been placed at an imminent, immediate, and continuing increased risk of harm from fraud and identity theft. Plaintiff and class members face substantial risk of out-of-pocket fraud losses such as loans opened in their names, medical services billed in their names, tax return fraud, utility bills opened in their names, credit card fraud, and similar identity theft.

111.    Plaintiff and class members face substantial risk of being targeted for future phishing, data intrusion, and other illegal schemes based on their Personal Information as potential fraudsters could use that information to target such schemes more effectively to Plaintiff and class members.

112.    Plaintiff and class members have and will also incur out-of-pocket costs for protective measures such as credit monitoring fees, credit report fees, credit freeze fees, and similar costs directly or indirectly related to the Data Breach.

113.    Plaintiff and class members have suffered or will suffer actual injury as a direct result of the Data Breach. Many victims suffered ascertainable losses in the form of out-of-pocket expenses and the value of their time reasonably incurred to remedy or mitigate the effects of the Data Breach relating to:

    a.  Reviewing and monitoring financial and other sensitive accounts and finding fraudulent insurance claims, loans, and/or government benefits

claims;

b.      Purchasing credit monitoring and identity theft prevention;

c.      Placing "freezes" and "alerts" with reporting agencies;

d.      Spending time on the phone with or at financial institutions, healthcare providers, and/or government agencies to dispute unauthorized and fraudulent activity in their name;

e.      Contacting financial institutions and closing or modifying financial accounts; and

f.      Closely reviewing and monitoring SSNs, bank accounts, and credit reports for unauthorized activity for years to come.

114.    Defendant entirely failed to provide any compensation for the unauthorized release and disclosure of Plaintiff and class members' Personal Information.

115.    The retail cost of credit monitoring and identity theft monitoring can cost around $200 a year per class member. This is a reasonable and necessary cost to monitor to protect class members from the risk of identity theft that arose from Defendant's Data Breach. This is a future cost for a minimum of five years that Plaintiff and class members would not need to bear but for Defendant's failure to safeguard their Personal Information.

116.    Plaintiff and class members suffered actual injury from having their Personal Information compromised as a result of the Data Breach including, but not limited to: (a) damage to and diminution in the value of their Personal Information, a form of property that Defendant obtained from Plaintiff and class members; (b) violation of their privacy rights; (c) imminent and impending injury arising from the increased risk of identity theft and fraud; and (d) emotional distress.

117.    Further, as a result of Defendant's conduct, Plaintiff and class members are forced to live with the anxiety that their Personal Information may be disclosed to the entire world, thereby subjecting them to embarrassment and depriving them of any right to privacy with respect to that information.

118.    As a direct and proximate result of Defendant's actions and inactions, Plaintiff and class members have suffered a loss of privacy and are at a present, imminent, and increased risk of future harm.

119.    Moreover, Plaintiff and class members have an interest in ensuring that their Personal Information, which is believed to remain in the possession of Defendant, is protected from further breaches by the implementation of security measures and safeguards, including but not limited to, making sure that the storage of data or documents containing Personal Information is not accessible online, is properly encrypted, and that access to such data is password protected.

120.    Many failures laid the groundwork for the occurrence of the Data Breach, starting with HSG's failure to incur the costs necessary to implement adequate and reasonable cybersecurity training, procedures, and protocols that were necessary to protect Plaintiff's and class members' Personal Information.

121.    Defendant maintained the Personal Information in an objectively reckless manner, making the Personal Information vulnerable to unauthorized disclosure.

122.    Defendant knew, or reasonably should have known, of the importance of safeguarding Personal Information and of the foreseeable consequences that would result if Plaintiff's and class members' Personal Information was stolen, including the significant costs that would be placed on Plaintiff and class members as a result of the breach.

123.    The risk of improper disclosure of Plaintiff's and class members' Personal Information was a known risk to Defendant, and thus Defendant was on notice that failing to take necessary steps to secure Plaintiff's and class members' Personal Information from that risk left the Personal Information in a dangerous condition.

124.    Defendant disregarded the rights of Plaintiff and class members by, *inter alia*, (i) intentionally, willfully, recklessly, or negligently failing to take adequate and reasonable measures to ensure that the Personal Information was protected against unauthorized intrusions; (ii) failing to disclose that it did not have adequately robust security protocols and training practices in place to adequately safeguard Plaintiff's and class members' Personal Information; (iii) failing to take standard and reasonably available steps to prevent the Data Breach; (iv) concealing the existence and extent of the Data Breach for an unreasonable duration of time; and (v) failing to provide Plaintiff and class members prompt and accurate notice of the Data Breach.

## CLASS ALLEGATIONS

125.    Plaintiff brings this class action individually and on behalf of all members of the following class of similarly situated persons pursuant to Federal Rule of Civil Procedure 23:

### Nationwide Class

All persons in the United States whose Personal Information was compromised in the Data Breach disclosed by Tekni-Plex, Inc., including all persons who were sent notice of the Data Breach.

126.    Alternatively, Plaintiff seeks to represent the following state class:

### Arizona Class

All persons in Arizona whose Personal Information was compromised in the Data Breach disclosed by Tekni-Plex, Inc., including all persons who were sent notice of the Data Breach.

127. Excluded from the class(es) are Defendant and its affiliates, parents, subsidiaries, officers, agents, and directors, and any entity in which Defendant has a controlling interest; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; and any and all federal, state, or local governments; and the judge(s) presiding over this matter and the clerks and family members of said judge(s).

128. Plaintiff reserves the right to modify or amend the definition of the proposed classes before the Court determines whether certification is appropriate.

129. Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of Plaintiff's claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

130. **Numerosity**: The members in the class are so numerous that joinder of all class members in a single proceeding would be impracticable. Upon information and belief, the Class is comprised of thousands of members and is sufficient to warrant certification. The class members are identifiable within Defendant's records inasmuch as Defendant has already provided them with notification of the breach.

131. **Commonality and Predominance**: Common questions of law and fact exist as to all class members and predominate over any potential questions affecting only individual class members. Such common questions of law or fact include, *inter alia*:

> a. Whether Defendant had a duty to implement and maintain reasonable security procedures and practices to protect and secure Plaintiff's and class members' Private Information from unauthorized access and disclosure;
>
> b. Whether the computer systems and data security practices employed by Defendant to protect Plaintiff's and class members' Personal Information

violated the FTC Act, and/or state laws and/or Defendant's other duties discussed herein;

c.    When Defendant actually learned of the Data Breach;

d.    Whether Defendant failed to adequately respond to the Data Breach, including failing to investigate it diligently and notify affected individuals in the most expedient time possible and without unreasonable delay, and whether this caused damages to Plaintiff and class members;

e.    Whether Plaintiff and class members suffered injury as a proximate result of Defendant's negligent actions or failures to act;

f.    Whether Defendant failed to exercise reasonable care to secure and safeguard Plaintiff's and class members' Personal Information;

g.    Whether Defendant adequately addressed and fixed the vulnerabilities which permitted the Data Breach to occur;

h.    Whether injunctive relief is appropriate and, if so, what injunctive relief is necessary to redress the imminent and currently ongoing harm faced by Plaintiff and class members;

i.    Whether Defendant's actions and inactions alleged herein constitute gross negligence;

j.    Whether Defendant breached its duties to protect Plaintiff's and class members' Personal Information; and

k.    Whether Plaintiff and all other members of the class are entitled to damages and the measure of such damages and relief.

132.    Defendant engaged in a common course of conduct, giving rise to the legal rights sought to be enforced by Plaintiff individually and on behalf of all other class members. Individual questions, if any, pale in comparison, in both quantity and quality, to the numerous common questions that dominate this action.

133.    **Typicality**: Plaintiff's claims are typical of the claims of the class. Plaintiff, like all proposed members of the class, had Personal Information compromised in the Data Breach. Plaintiff and class members were injured by the same wrongful acts, practices, and omissions committed by Defendant, as described herein. Plaintiff's claims therefore arise from the same practices or course of conduct that give rise to the claims of all class members.

134.    **Adequacy**: Plaintiff will fairly and adequately protect the interests of the class members. Plaintiff is an adequate representative of the class and has no interests adverse to, or in conflict with, the class that Plaintiff seeks to represent. Plaintiff has retained counsel with substantial experience and success in the prosecution of complex consumer protection class actions of this nature.

135.    **Superiority**: A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages and other financial detriment suffered by Plaintiff and all other class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, so it would be impracticable for class members to individually seek redress from Defendant's wrongful conduct. Even if class members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far

fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

136.    The nature of this action and the nature of laws available to Plaintiff and class members make the use of the class action device a particularly efficient and appropriate procedure to afford relief to Plaintiff and class members for the wrongs alleged because Defendant would necessarily gain an unconscionable advantage since it would be able to exploit and overwhelm the limited resources of each individual class member with superior financial and legal resources; the costs of individual suits could unreasonably consume the amounts that would be recovered; proof of a common course of conduct to which Plaintiff were exposed is representative of that experienced by the class and will establish the right of each class member to recover on the cause of action alleged; and individual actions would create a risk of inconsistent results and would be unnecessary and duplicative of this litigation.

137.    The litigation of the claims brought herein is manageable. Defendant's uniform conduct, the consistent provisions of the relevant laws, and the ascertainable identities of class members demonstrate that there would be no significant manageability problems with prosecuting this lawsuit as a class action.

138.    Adequate notice can be given to class members directly using information maintained in Defendant's records.

139.    Unless a class-wide injunction is issued, Defendant may continue in its failure to properly secure the Personal Information of class members, Defendant may continue to refuse to provide proper notification to class members regarding the Data Breach, and Defendant may continue to act unlawfully as set forth in this complaint.

140.    Further, Defendant has acted or refused to act on grounds generally applicable to the class and, accordingly, final injunctive or corresponding declaratory relief with regard to the class members as a whole is appropriate under Rule 23(b)(2) of the Federal Rules of Civil Procedure.

<u>COUNT I</u>
**NEGLIGENCE**
**(On behalf of Plaintiff and all Classes)**

141.    Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

142.    Defendant collected the Personal Information of Plaintiff and class members in the ordinary course of providing services directly or indirectly to Plaintiff and class members.

143.    Defendant owed a duty to Plaintiff and all other class members to exercise reasonable care in safeguarding and protecting their Personal Information in its possession, custody, or control. Defendant's duty included a responsibility to implement processes by which it could detect a breach of its security systems in a reasonably expeditious period of time and to give prompt notice to those affected in the case of a data breach. Defendant's duties arose under common law, and FTC guidance.

144.    Defendant knew, or should have known, the risks of collecting and storing Plaintiff's and class members' Personal Information and the importance of maintaining secure systems. HSG knew, or should have known, of the many data breaches that targeted healthcare service providers in recent years.

145.    Given the nature of Defendant's business, the sensitivity and value of the Personal Information it maintains, and the resources at its disposal, Defendant should have identified the vulnerabilities to its systems and prevented the Data Breach from occurring.

146.    Defendant breached these duties by failing to exercise reasonable care in safeguarding and protecting Plaintiff's and class members' Personal Information by failing to design, adopt, implement, control, direct, oversee, manage, monitor, and audit appropriate data security processes, controls, policies, procedures, protocols, and software and hardware systems to safeguard and protect Personal Information entrusted to it—including Plaintiff's and class members' Personal Information.

147.    It was reasonably foreseeable to Defendant that its failure to exercise reasonable care in safeguarding and protecting Plaintiff's and class members' Personal Information by failing to design, adopt, implement, control, direct, oversee, manage, monitor, and audit appropriate data security processes, controls, policies, procedures, protocols, and software and hardware systems would result in the unauthorized release, disclosure, and dissemination of Plaintiff's and class members' Personal Information to unauthorized individuals.

148.    Defendant's duty of care to use reasonable security measures also arose as a result of the special relationship that existed between Defendant and patients of Defendant's clients. Defendant was in a superior position to ensure that their systems were sufficient to protect against the foreseeable risk of harm to Plaintiff and class members from a data breach.

149.    Defendant's duty to use reasonable care in protecting confidential data arose not only as a result of the statutes and regulations described above, but also because Defendant is bound by industry standards to protect confidential Personal Information.

150.    But for Defendant's negligent conduct or breach of the above-described duties owed to Plaintiff and class members, their Personal Information would not have been compromised.

151.    As a result of Defendant's above-described wrongful actions, inaction, and want of

ordinary care that directly and proximately caused the Data Breach, Plaintiff and all other class members have suffered, and will continue to suffer, economic damages and other injury and actual harm in the form of, *inter alia*: (i) a substantially increased risk of identity theft and medical theft—risks justifying expenditures for protective and remedial services for which they are entitled to compensation; (ii) improper disclosure of their Personal Information; (iii) breach of the confidentiality of their Personal Information; (iv) deprivation of the value of their Personal Information, for which there is a well-established national and international market; (v) lost time and money incurred to mitigate and remediate the effects of the Data Breach, including the increased risks of medical identity theft they face and will continue to face; and (vii) actual or attempted fraud.

152.     Plaintiff and class members are entitled to compensatory and consequential damages suffered as a result of the Data Breach.

153.     Plaintiff and class members are also entitled to injunctive relief requiring HSG to, e.g., (i) strengthen their data security systems and monitoring procedures; (ii) submit to future annual audits of those systems and monitoring procedures; and (iii) continue to provide adequate credit monitoring to all class members.

## COUNT II
## BREACH OF FIDUCIARY DUTY
### (On behalf of Plaintiff and all Classes)

154.     Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

155.     Plaintiff and class members either directly or indirectly gave Defendant their Personal Information in confidence, believing that Defendant would protect that information. Plaintiff and class members would not have provided Defendant with this information had they

known it would not be adequately protected. HSG's acceptance and storage of Plaintiff's and class members' Personal Information created a fiduciary relationship between Defendant and Plaintiff and class members. In light of this relationship, Defendant must act primarily for the benefit of Plaintiff and class members, which includes safeguarding and protecting Plaintiff's and class members' Personal Information.

156.    Defendant accepted and used Plaintiff's and class members' Personal Information for its own pecuniary benefit and accepted the Personal Information with full knowledge of the need to maintain it as confidential, the need to implement appropriate data security measures, and the significant harm that would result to Plaintiff and class members if the confidentiality of their Personal Information was breached.

157.    Defendant was in a superior position of trust and authority to Plaintiff and class members.

158.    Plaintiff and class members had no way to ensure that Defendant's data security measures were adequate and no way to influence or verify the integrity of Defendant's data security posture.

159.    Defendant has a fiduciary duty to act for the benefit of Plaintiff and class members upon matters within the scope of their relationship. It breached that duty by failing to properly protect the integrity of the system containing Plaintiff's and class members' Personal Information, failing to comply with the data security guidelines, and otherwise failing to safeguard the Personal Information of Plaintiff and class members it collected. Defendantalso breached its fiduciary duty by failing to diligently discover, investigate, and give notice of the Data Breach in a reasonable and practicable period.

160.    As a direct and proximate result of Defendant's breaches of its fiduciary duties, Plaintiff and class members have suffered and will suffer injury, including, but not limited to: (i) a substantial increase in the likelihood of identity theft; (ii) the compromise, publication, and theft of their Personal Information; (iii) out-of-pocket expenses associated with the prevention, detection, and recovery from unauthorized use of their Personal Information; (iv) lost opportunity costs associated with effort attempting to mitigate the actual and future consequences of the Data Breach; (v) the continued risk to their Personal Information, which remains in HSG's possession; (vi) future costs in terms of time, effort, and money that will be required to prevent, detect, and repair the impact of the Personal Information compromised as a result of the Data Breach; and (vii) actual or attempted fraud; (viii) future costs in terms of time, effort, and money that will be expended as result of the Data Breach for the remainder of the lives of Plaintiff and class members; and (ix) the diminished value of Defendant's services they received.

## COUNT III
## UNJUST ENRICHMENT
### (On behalf of Plaintiff and all Classes)

161.    Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

162.    This claim is pleaded in the alternative to any current or future contract claims, pursuant to Fed. R. Civ. P. 8(d).

163.    Plaintiff and class members conferred a monetary benefit, directly or indirectly, upon HSG in the form of monies paid for services or other services.

164.    Defendant accepted or had knowledge of the benefits conferred upon it by Plaintiff and class members. Defendant also benefitted from the receipt of Plaintiff's and class members' Personal Information.

165.    As a result of Defendant's conduct, Plaintiff and class members suffered actual damages in an amount equal to the difference in value between their payments made with reasonable data privacy and security practices and procedures that Plaintiff and class members paid for, and those payments without reasonable data privacy and security practices and procedures that they received.

166.    Under principles of equity and good conscience, Defendant should not be permitted to retain the money belonging to Plaintiff and class members because Defendant failed to adequately implement the data privacy and security procedures for itself that Plaintiff and class members paid for and that were otherwise mandated by federal, state, and local laws, and industry standards.

167.    Defendant should be compelled to provide for the benefit of Plaintiff and class members all unlawful proceeds received by it as a result of its misconduct and the Data Breach.

**COUNT IV**
**DECLARATORY AND INJUNCTIVE RELIEF**
**(On behalf of Plaintiff and all Classes)**

168.    Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

169.    This count is brought under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201.

170.    Defendant owes a duty of care to Plaintiff and class members that require it to adequately secure Plaintiff's and class members' Personal Information.

171.    Defendant still possesses the Personal Information of Plaintiff and class members.

172.    Defendant has not satisfied its contractual obligations and legal duties to Plaintiff and class members.

173.    Actual harm has arisen in the wake of the Data Breach regarding Defendant's contractual obligations and duties of care to provide security measures to Plaintiff and class members. Further, Plaintiff and class members are at risk of additional or further harm due to the exposure of their Personal Information and Defendant's failure to address the security failings that led to such exposure.

174.    There is no reason to believe that Defendant's employee training and security measures are any more adequate now than they were before the breach to meet Defendant's contractual obligations and legal duties.

175.    Plaintiff, therefore, seek a declaration (1) that Defendant's existing data security measures do not comply with its contractual obligations and duties of care to provide adequate data security, and (2) that to comply with its contractual obligations and duties of care, HSG must implement and maintain reasonable security measures, including, but not limited to, the following:

      a.    Prohibit Defendant from engaging in the wrongful and unlawful acts described herein;

      b.    Ordering that Defendant engage internal security personnel to conduct testing, including audits on Defendant's systems, on a periodic basis, and ordering Defendant to promptly correct any problems or issues detected by such third-party security auditors;

      c.    Requiring Defendant to protect, including through encryption, all data collected through the course of its business in accordance with all applicable regulations, industry standards, and federal, state, or local laws;

      d.    Ordering that Defendant engage third-party security auditors and internal personnel to run automated security monitoring;

e.  Ordering that Defendant audit, test, and train its security personnel and employees regarding any new or modified data security policies and procedures;

f.  Ordering that Defendant purge, delete, and destroy, in a reasonably secure manner, any Personal Information not necessary for its provision of services;

g.  Ordering that Defendant conduct regular database scanning and security checks; and

h.  Prohibiting Defendant from maintaining Personal Information of Plaintiff and class members on a cloud-based database;

i.  Requiring Defendant to segment data by, among other things, creating firewalls and access controls so that if one area of Defendant's network is compromised, hackers cannot gain access to other portions of Defendant's systems;

j.  Ordering that Defendant routinely and continually conduct internal training and education to inform internal security personnel and employees how to safely share and maintain highly sensitive Personal Information, including but not limited to, patient personally identifiable information and patient protected health information;

k.  Requiring Defendant to implement a system of tests to assess its respective employees' knowledge of the education programs discussed in the preceding paragraphs, as well as randomly and periodically testing

employees compliance with Defendant's policies, programs, and systems for protecting personal identifying information;

l.      Requiring Defendant to meaningfully educate all class members about the threats they face as a result of the loss of their confidential personal identifying information to third parties, as well as the steps affected individuals must take to protect themselves;

m.      Requiring Defendant to implement logging and monitoring programs sufficient to track traffic to and from Defendant's servers; and for a period of 10 years, appointing a qualified and independent third-party assessor to conduct a SOC 2 Type 2 attestation on an annual basis to evaluate Defendant's compliance with the terms of the Court's final judgment, to provide such report to the Court and to counsel for the class, and to report any deficiencies with compliance of the Court's final judgment;

n.      Such other and further relief as this Court may deem just and proper.

## **PRAYER FOR RELIEF**

Plaintiff, individually and on behalf of all other members of the class, respectfully requests that the Court enter judgment in Plaintiff's favor and against Defendant as follows:

A.      Certifying the class(es) as requested herein, designating Plaintiff as class representative, and appointing Plaintiff's counsel as Class Counsel;

B.      Awarding Plaintiff and the class appropriate monetary relief, including actual damages, statutory damages, punitive damages, restitution, and disgorgement;

C.      Awarding Plaintiff and the class equitable, injunctive, and declaratory relief, as may be appropriate. Plaintiff, individually and on behalf of the class, seeks appropriate injunctive relief

designed to prevent Defendant from experiencing another data breach by adopting and implementing best data security practices to safeguard Personal Information and to provide or extend credit monitoring services and similar services to protect against all types of identity theft and medical identity theft;

D.      Awarding Plaintiff and the class pre-judgment and post-judgment interest to the maximum extent allowable;

E.      Awarding Plaintiff and the class reasonable attorneys' fees, costs, and expenses, as allowable; and

F.      Awarding Plaintiff and the class such other favorable relief as allowable under law.

## JURY TRIAL DEMANDED

Plaintiff demands a trial by jury of all claims so triable.

Dated: September 30, 2025                         Respectfully submitted,

Benjamin F. Johns (ID No. 201373)
Samantha E. Holbrook (ID No. 311829)
**SHUB JOHNS & HOLBROOK LLP**
Four Tower Bridge
200 Barr Harbor Drive, Suite 400
Conshohocken, PA 19428
Telephone: (610) 477-8380
Facsimile: (856) 210-9088
bjohns@shublawyers.com
sholbrook@shublawyers.com

Andrew W. Ferich (ID No. 313696)
Alyssa D. Brown (*pro hac vice* to be filed)
**AHDOOT & WOLFSON, PC**
201 King of Prussia Road, Suite 650
Radnor, PA 19087
Telephone: (310) 474-9111
Facsimile: (310) 474-8585
aferich@ahdootwolfson.com
abrown@ahdootwolfson.com

*Counsel for Plaintiff and the Putative Class*